## In re REAPPORTIONMENT OF the COLORADO GENERAL ASSEMBLY.

### No. 92SA19.

Supreme Court of Colorado, En Banc.

March 30, 1992.

---

Holme, Roberts & Owen, Daniel S. Hoffman, Daniel J. Dunn, Stephen P. Ward, Colorado Reapportionment Com'n, Rebecca C. Lennahan, Denver, for Colorado Reapportionment Com'n.

Charles H. Richardson, Christopher K. Daly, Aurora, for City of Aurora, Colo.

Luis A. Corchado, Denver, Manuel I. Lopez, Motz, Gonzales and Martinez, Martin A. Gonzales, Alamosa, for Hispanic League.

Holland and Hart, John C. Barajas, Denver, for Colorado Hispanic Bar Ass'n.

Steven R. Ruddick, Aurora, amicus curiae.

Schmidt and Schmidt, Mark H. Schmidt, Springfield, for Bd. of County Com'rs of Baca County, Colo.

Steven G. Keppers, Littleton, for Columbine Knolls South Homeowners' Ass'n.

Menola N. Upshaw, Denver, for N.A.A.C.P., Denver Branch.

Dr. Lawrence E. Lewis, Denver, for Colorado–Wyoming State Conference Branches of N.A.A.C.P.

Rev. Oscar S. Tillman, Denver, for Legal Redress Staff.

Harden, Schmidt, Hass & Haag, P.C., George H. Hass, Asst. Larimer County Atty., Fort Collins, for Bd. of County Com'rs, Larimer County and Larimer County Clerk and Recorder.

Gerie Grimes, Denver, for Colorado Black Roundtable, Inc.

Charles R. Duke, State Representative, Denver, for House Dist. 20.

Jeanne M. Adkins, State Representative, Denver, for House Dist. 40.

John M. Ely, Asst. Pitkin County Atty., Aspen, for Pitkin County Bd. of County Com'rs.

Fossum, Hatter & Green, P.C., James Hatter, Cortez, for Bipartisan Committee to Keep Montezuma County Whole.

Robert Sack, Clerk and Recorder of Adams County, James D. Robinson, Brighton, for Adams County Clerk and Recorder.

Zak, Fox, Pehr and Fuller, P.C., Richard L. Fuller, David W. Pehr, Westminster, for Joan M. Johnson, Sheryl L. Pehr, and Amanda S. Pehr.

Rick DeWitt, Englewood City Atty., Englewood, for City of Englewood.

Grant, Bernard, Lyons & Gaddis, P.C., Daniel F. Bernard, Suzan D. Fritchel, Longmont, for Arapahoe County School Dist. No. 1.

Martin R. McCullough, Westminster City Atty., Westminster, for City of Westminster.

Davis, Graham & Stubbs, Gale T. Miller, Richard A. Westfall, Denver, Pryor, Carney and Johnson, Pamela J. Fair, Englewood, for Jennie Sanchez, Adeline Sanchez and Esther Grant.

Wilma M. Taylor, Denver, for Colorado Black Women For Political Action.

Peter Lawrence Vana, Arapahoe County Atty., Darrel L. Matteson, Asst. County Atty., Robert Lembke, Sp. Asst. County Atty., Littleton, for Arapahoe County Com'r.

Trimble, Tate and Nulan, P.C., Penfield W. Tate III, Penfield W. Tate II, Bernard L. Black, Jr., Denver, for Blacks for Fair Reapportionment.

Hayes, Phillips & Maloney, P.C., John E. Hayes, Denver, for City of Sheridan, Colo., and Individually Named Registered Electors and Elected Officials.

Miller & Delay, P.C., Reese Miller, Westminster, for Sheridan School Dist.

Davis, Graham & Stubbs, Stephen H. Kaplan, Dan Friesen, Denver, for Michael Henry, Selma Lock, Bob Dean, Fern Osborne, Doug Franssen, Maureen H. Loyacono, Pat Sullivan, Alvin J. Koops, Richard Newlon, Denver Democratic Party, Warren Weston, Helen C. Shreves, Jane Werner, Art Binkley, Joann Ortega, Gail Glover, Jane Craft, Betty Spindler, Bob Goss, Cecily Jones, Judy Mays, Mary Gibson, June and Leonard Hurst.

H. Lawrence Hoyt, Boulder County Atty., Boulder, for Boulder County Clerk and Recorder.

Reta A. Crain, Castle Rock, for Douglas County Clerk and Recorder.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Michael Savislan, Asst. Atty. Gen., Denver, for Natalie Meyer, Secretary of State of Colo.

Justice ERICKSON delivered the Opinion of the Court.

In *In re Reapportionment of the Colorado General Assembly*, 828 P.2d 185 (Colo.1992), we disapproved the Final Plan of the Colorado Reapportionment Commission and returned the plan to the Commission for revision, modification, and resubmission. Colo. Const. art. V, § 48(1)(e). We disapproved that part of the Final Plan which divided Pitkin County and the City of Aspen into House Districts 57 and 61, and the Commission was directed to consider alternative ways of achieving equality of population while minimizing county and city splits, and preserving compactness and communities of interest where possible. *In re Reapportionment*, 828 P.2d at 195–196. Moreover, the Perry Park portion of the Final Plan was to be corrected and the boundaries of House Districts 20 and 64 were to be redrawn to conform with article V, section 47(3). *In re Reapportionment*, 828 P.2d at 194. The Commission was also directed to incorporate the technical changes requested by Larimer and Boulder Counties. *Id.* 828 P.2d at 200.

The Commission has now submitted a revised plan for the reapportionment of the general assembly. We conclude that the revised plan conforms with our directions and satisfies the constitutional criteria of sections 46 and 47 of article V. Accordingly, we approve the revised Final Plan.

I

■ The original plan submitted to this court divided Pitkin County and the City of Aspen into House Districts 57 and 61. We found that

the Commission's explanation for dividing Pitkin County and the City of Aspen, and for the further division of Snowmass Village from Aspen, does not rise to the level of an adequate factual showing that less drastic alternatives could not have satisfied the equal population requirement of the Colorado Constitution. Furthermore, the explanation does not provide a basis for meaningful judicial review of the Commission's decision. We, therefore, disapprove that part of the

Final Plan which divides Pitkin County and the City of Aspen into House Districts 57 and 61. We return that part of the plan for reconsideration, revision, modification, and resubmission. If, after considering alternatives, the Commission concludes that the present Final Plan for Districts 57 and 61 is still constitutionally preferable to the alternatives, it may resubmit the present plan. In that case, the Commission should provide the court with additional information detailing the alternatives considered and the reasons for their rejection.

*In re Reapportionment*, 828 P.2d at 195–196. Upon remand, the Commission considered eight alternate plans for the boundaries of House Districts 57 and 61, and adjacent house districts. The alternative ultimately selected by the Commission (VIA) still splits Pitkin County into Districts 57 and 61, but the City of Aspen remains intact in District 61. Thus, the advantage of the revised plan for Pitkin County over the plan we rejected is that it eliminates one city split.

In addition to the revised plan, the Commission considered but rejected seven other possible plans. Alternative I kept all of Pitkin County in District 57 and split Eagle County. To maintain equality of population, the Town of Vail was included in District 57, but Glenwood Springs was divided. The Commission rejected this alternative because it split a city and offered no net improvement with respect to preservation of communities of interest. Alternative II was similar to the first, but did not split Glenwood Springs. It was rejected because of no net improvement in preservation of communities of interest and because Glenwood Springs, the county seat of Garfield County, was placed in a district separate from the rest of the county.

Alternative III retained all of Pitkin County in District 57 and made compensating adjustments in boundaries of districts to the west. The Commission discarded this alternative because it split both Garfield and Delta Counties three ways rather than two, as in both the original and revised plans for Pitkin County. Alternative IV, which kept Pitkin County whole in District 57 and Glenwood Springs whole in District 56, made up the population loss by including a part of Summit County in District 61. This plan was unsatisfactory because it split more counties than the original Final Plan. Similarly, Alternative V, which made population adjustments to the east and then north, was eliminated because it caused more counties to be split than the Final Plan.

Alternative VII placed all of Pitkin County in District 61. The Commission concluded that this alternative would split a community of interest in Lake County. In addition, this alternative would not address the concerns of limited access between parts of Pitkin County and the rest of District 61. *See In re Reapportionment*, 828 P.2d at 195. The final alternative, Alternative VIII, placed all of Pitkin County in House District 56. The Commission rejected it because it involved the same split of Eagle County and of communities of interest that led the Commission to reject the Alternatives I, II, IV, and V.

The Commission's revised plan for Pitkin County and Aspen is similar to the plan we disapproved except the new plan does not split Aspen. For the first time, however, the Commission has provided us with a sufficient basis for judicial review of its actions and reasons for the necessity that Pitkin County be divided. We conclude that the Commission's revised plan (VIA) for Pitkin County satisfies constitutional requirements. Colo.Const. art. V, §§ 46, 47.

## II

In accordance with our directions on remand, the Commission has redrawn the boundaries of House Districts 20 and 64 to place all of Perry Park in District 20. In addition, the Commission has incorporated all but one of the technical modifications to the plan requested by Boulder and Larimer Counties. The Commission has determined that one of the Boulder County technical requests can not be incorporated in the Final Plan without upsetting the equality of population requirements of article V,

§ 46. We therefore approve the Commission's revised and modified Final Plan which was submitted to this court on March 19, 1992, and we order that the Commission file the approved plan with the Secretary of State no later than March 30, 1992.

QUINN, J., dissents, and MULLARKEY, J., joins in the dissent.

Justice QUINN dissenting:

I dissent from the court's approval of Plan VIA because, in my view, it not only sacrifices the more important constitutional requirement of compactness to the less important standard of preserving communities of interest but also results in a greater disruption of communities of interest than would result under the alternative Plan VII rejected by the Commission.

## I.

This court's opinion on March 13, 1992, disapproved that part of the Commission's plan which divided Pitkin County and the City of Aspen into House Districts 57 and 61. Our disapproval was based primarily on the fact that "the Commission's explanation for dividing Pitkin County and the City of Aspen, and for the further division of Snowmass Village from Aspen, does not rise to the level of an adequate factual showing that less drastic alternatives could not have satisfied the equal population requirement of the Colorado Constitution." *In re Reapportionment*, 828 P.2d 185, 196 (Colo.1992). In response to our direction that the Commission modify or revise House Districts 57 and 61, the Commission considered eight alternative plans. From these eight alternatives, the Commission selected Plan VIA. The majority today approves Plan VIA notwithstanding the fact that the only significant change in Plan VIA from the Commission's original plan for House Districts 57 and 61 is to place the entire city of Aspen, including the Aspen Grove subdivision which was split from the City of Aspen in the Commission's former plan, into one district, House District 61. In all other respects, Plan VIA is identical to the plan disapproved by this court in its former opinion.

## II.

Plan VIA splits Pitkin County and places the greater part of the county, including the City of Snowmass Village, in House District 57, and places the remainder of Pitkin County, including the entire City of Aspen, in House District 61. Under Plan VIA, House District 61 includes the entire City of Aspen and a small section of the eastern portion of Pitkin County and the whole counties of Gunnison, Hinsdale, Chaffee, Lake, and Park. Under Plan VIA, the City of Aspen lies to the north and west of all of the counties and communities of House District 61 and remains separated from the remainder of House District 61 by Independence Pass, which is closed a substantial part of the year. No similar barrier, however, separates the City of Aspen from Snowmass Village, from the remainder of Pitkin County not placed in House District 61, or from the City of Glenwood Springs, all of which are placed in House District 57 under Plan VIA. House District 57 includes portions of Garfield and Pitkin County and the whole counties of Moffat and Rio Blanco.

It is undisputed that the most important constitutional requirement under Article V, section 47 of the Colorado Constitution is equality of population. *In re Reapportionment*, 828 P.2d at 193. Next in order of importance is compactness, and last is the preservation of the communities of interest. *Id.* Notwithstanding the superior status accorded by the Colorado Constitution to compactness, it appears to me that the Commission simply appropriated the City of Aspen, the population center and county seat of Pitkin County, from the remainder of Pitkin County in order to meet the population requirements of House District 61 without regard for either constitutional compactness or preserving communities of interest between the City of Aspen and the remainder of Pitkin County from which Aspen has been severed. While I concede that the constitutional requirement of compactness must to some extent be

weighed with other constitutional criteria, including the preservation of communities of interest, I am nonetheless convinced that Plan VII, which was rejected by the Commission in favor of Plan VIA, achieves not only a substantially greater measure of compactness than Plan VIA but also results in less disruption of communities of interest than the disruption caused by Plan VIA.

### III.

In contrast to Plan VIA, Plan VII places all of Pitkin County in House District 61 and includes within that district Gunnison, Chaffee, and Park Counties. Plan VII places Garfield, Rio Blanco, and Moffat Counties in House District 57, along with a small part of the southwestern portion of Eagle County encompassing the towns of Basalt and El Jebel, both of which are part of the Roaring Fork Valley community and thus have a close community of interest with the greater part of that community located in Garfield County.

Plan VII also would configure House District 56 to include Lake County with the northern counties of Eagle, Grand, Routt, and Jackson and the northern part of Summit County. The Commission, in its revised final plan, states that Plan VII does not offer a net improvement in county splits over the original plan but concedes that it improves compactness in House Districts 57 and 61 while resulting in less compactness in House District 56. Obviously, the net result of Plan VII is the achievement of constitutional compactness in one more house district than is achieved under Plan VIA. The Commission nonetheless rejects Plan VII on the ground that Lake County, which Plan VII places in House District 61 with its neighboring counties to the north, has closer ties to southern counties. While Lake County's community of interest with its southern neighbors is undoubtedly of constitutional significance, that interest should yield to the constitutional requirement of compactness under the circumstances of this case. Severing the City of Aspen, which is the county seat and population center of Pitkin County, from the rest of Pitkin County,

including the City of Snowmass Village, all of which would be integrated in the same district under Plan VII, is much more destructive to the values of the constitutional criteria than is the movement of Lake County as a whole from one house district to another.

Moreover, Plan VII, in contrast to Plan VIA, would preserve the communities of interest between the lower Roaring Fork Valley towns of Basalt and El Jebel with the greater part of that community located in Garfield County. Plan VIA severs these communities from the remainder of Garfield County and places them in House District 56 with Eagle, Routt, Jackson, and Grand Counties. A similar disruption of communities of interest is caused under Plan VIA by separating the City of Carbondale from Glenwood Springs, both of which would be placed in House District 57 under Plan VII.

Although some disruption of preexisting communities of interest will result under either Plan VIA or Plan VII, there would be a greater degree of compactness among House Districts under Plan VII than under Plan VIA and there would be less disruption of preexisting communities of interest under Plan VII than under the plan selected by the Commission and approved by this court. I therefore dissent from this court's approval of Plan VIA.

MULLARKEY, J., joins in this dissent.